**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

MONIQUE LOCKHART,

    and

MONIQUE LOCKHART, *next best friend of* K.C.,

           Plaintiffs,

    v.

COASTAL INTERNATIONAL SECURITY, INC.

           Defendant.

Civil Action No. 11-02264 (BAH)
Judge Beryl A. Howell

---

<u>**MEMORANDUM OPINION**</u>

Pending before the Court is the motion filed by the defendant Coastal International Security, Inc. ("Coastal"), to dismiss the Complaint of Plaintiffs Monique Lockhart and Monique Lockhart, as next best friend of K.C., pursuant to Federal Rule of Civil Procedure 41(b), for "failure to prosecute and failure to follow the Court's order."  Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 14, at 2.  The defendant also moves to dismiss due to the "Plaintiff's failure and/or refusal to take appropriate steps to resolve her claims through [the D.C. Department of Employment Services]," which "has primary jurisdiction over these claims."  *Id.*  For the reasons set forth below, this motion will be granted in part and denied in part.[1]

## I.    BACKGROUND

### A.    Factual Allegations

The defendant "performs security and related services under various contracts in the District of Columbia and nationwide."  Complaint ("Compl."), ECF No. 1-1, ¶ 3.  The plaintiffs

---

[1] The Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332(a), since the plaintiffs are residents of Maryland, the defendant is incorporated under the laws of South Carolina and maintains its principal place of business in Virginia, and the Complaint alleges monetary damages in excess of $75,000.

allege that Monique Lockhart was formerly employed, beginning in June, 2004,[2] by the defendant and had "problems with her supervisor, Lieutenant Minor . . . and other Coastal employees." *Id.* ¶¶ 7, 9.  These problems allegedly stemmed from Lockhart's refusal "to make a false statement in support of Mr. Minor," in connection with a sexual harassment case, which refusal prompted "Coastal officers," to make "repeated threats against the physical safety of Ms. Lockhart." *Id.* ¶¶ 9-11, 37.

Set against the backdrop of this "pattern of abuse and harassment," *id.* ¶ 13, the claims focus primarily on the events that allegedly occurred on September 9, 2008.  On that day, Lockhart "was not feeling well due to her pregnancy." *Id.* ¶ 15.  Her supervisor denied her "an extra break," but told Lockhart "to sit down while she was waiting for other Coastal employees." *Id.* ¶¶ 15-16.  Lockhart "passed out while sitting." *Id.* ¶ 17.  In an effort to bring her "back to consciousness, Mr. Minor shouted at Ms. Lockhart and repeatedly slapped Ms. Lockhart in the face." *Id.*  When she regained consciousness, her supervisor made her "perform an exterior patrol of the premises and then return to the post," before granting her request to leave for the day. *Id.* ¶¶ 18, 19.

Lockhart was subsequently terminated for "'neglect of duty including sleeping on duty,'" a citation she disputes on grounds that she "was not neglecting her duty by falling asleep but rather fell unconscious after she was repeatedly denied a break." *Id.* ¶¶ 21-22.[3]  The Complaint alleges that, "[s]ubsequent to [her] termination," as a result of the defendant's conduct, she "was plagued by various medical complications . . . causing her child, [K.C.], to be born with physical

---

[2] The Complaint does not provide information regarding Lockhart's position with the defendant, but the defendant states that Lockhart was employed "as a security guard."  Def.'s Mem. in Supp. of Mot. to Stay, ECF No. 4, at 1.

[3] In its Answer to the Complaint, the defendant admits that Lockhart was terminated for events occurring on September 9, 2008, and that she was cited for various violations, including "sleeping while on duty and neglect of duty."  Def.'s Answer and Defenses to Pls.' Compl., ECF No. 3, at ¶¶ 20, 21.

abnormalities." *Id.* ¶¶ 24, 25.

**B.      Procedural Background**

The plaintiffs filed their Complaint in Superior Court of the District of Columbia on September 8, 2011, alleging that the defendant breached a duty to "not expos[e] [employees] to dangerous work conditions, and to observe reasonable standards of care for employees under medical conditions." *Id.* ¶ 28.  Plaintiffs allege that Coastal further breached that duty by "allowing other employees to slap [Lockhart] in the face repeatedly and force her to walk a patrol, and or to refuse reasonable request for leave," *id.* ¶ 52, as well as by "allowing the supervisor to assault and otherwise abuse Plaintiff Lockhart," *id.* ¶ 60.  Based upon their factual and legal allegations, the plaintiffs assert a total of five claims: three claims on behalf of both Lockhart and her child, K.C., namely, negligence (Count I), intentional infliction of emotional distress (Count III), and negligent supervision (Count V); and two claims on behalf of Lockhart alone, for wrongful discharge in violation of public policy because she was allegedly terminated due to her medical disability (pregnancy) and "for her refusal to cover up an investigation into allegations of violation of Title VII," *id.* ¶ 39 (Count II), and negligent infliction of emotional distress (Count IV).  They seek relief for the "physical, emotional, and financial harm" caused to "both Ms. Lockhart as a former employee and Master [K.C.]," *id.* ¶ 31; *see also* ¶¶ 47-49, 55-57, 62, in the amount of no less than $5,000,000, *id.* at 12 (Request for Relief).

Following removal of the action to this Court, the defendant filed its Answer to the Complaint asserting, *inter alia*, the defenses that the Complaint, in whole or in part, fails to state a cause of action upon which relief may be granted ("First Defense") and that plaintiffs' claims are barred, in whole or in part, for failure to exhaust administrative remedies and/or jurisdictional prerequisites to suit ("Second Defense").  Def.'s Answer and Defenses to Pls.' Compl., ECF No.

3, at 15.

   The plaintiffs' representations in proceedings after the pleadings were closed are relevant to consideration of the defendant's motion to dismiss for failure to prosecute and/or comply with Court orders, and will therefore be reviewed in some detail.  On the same day as filing its Answer, the defendant requested that the case be stayed "because all the torts alleged in Plaintiffs' Complaint, including Counts I, III, IV, and V, arose from a work-related incident in the workplace," and, under D.C. law, a "'substantial question' exists as to whether these counts are covered by the D.C. Worker's Compensation Act."  Def.'s Mot. to Stay, ECF No. 4, at 1. The plaintiffs consented to a partial stay of the claims in Counts I, III, and IV, *see id.* at 2,[4] but filed no timely opposition to the part of the motion seeking to stay Counts II and V as well.  The Court granted the defendant's motion, based on the plaintiffs' partial concession and partial consent, and stayed the case in its entirety pending the determination by the D.C. Department of Employment Services ("DOES") of the applicability of the D.C. Worker's Compensation Act ("WCA") to the plaintiffs' claims.[5]  *See* Minute Order (Jan. 14, 2012).  The Court instructed the parties to file a joint status report by March 14, 2012, indicating whether DOES had "made a determination regarding the claims in this action or whether the stay should be continued." Minute Order (Jan. 14, 2012).

   The first status report, filed by the defendant alone, rather than jointly as required by the Court's January 14, 2012 Order, advised that the defendant had received no notice of submission of the plaintiffs' claims to DOES,[6] but that plaintiffs' counsel represented that "he believes he

---

[4] The plaintiffs filed no opposition or other papers in response to the defendant's request for a stay, leaving the Court to rely solely on the representations made in the defendant's papers about the plaintiffs' position.

[5] The Court also stayed Count II, alleging wrongful discharge, since it arose out of the same events as the other counts and "to avoid piecemeal litigation."  Minute Order (Jan. 14, 2012).

[6] The defendant indicates that "[t]ypically, such notification would be received shortly after a claim is filed

has submitted their claims to DOES and will supplement this Status Report with the date of the

filing and the docket number."  Status Report, ECF No. 7, dated March 14, 2012, at ¶ 1.  The

Court accordingly continued the stay, but also directed that the next joint status report be filed

within one week and specifically provide "(1) the date of plaintiffs' filing, if any, of claims with

DOES; (2) the status of those claims; (3) whether the filing, if any, with DOES was timely; and

(4) if no filing by the plaintiffs with DOES was made, whether the stay should be lifted."  Minute

Order (Mar. 15, 2012).

The second status report, which was filed jointly, acknowledged that (1) a "'substantial

question' exists as to whether the counts in Plaintiffs' complaint and the injuries upon which

they are based are compensable exclusively through the D.C. Worker's Compensation Act

("WCA") and whether this Court lacks primary jurisdiction;" (2) the "issues in this case should

be decided by DOES, after filing by Plaintiffs, because the answer may well be that Plaintiffs'

claims are covered by the exclusivity provision of the WCA;" and (3) "[w]hether Plaintiffs'

filing, if any, with DOES is/was timely and, therefore, whether Plaintiffs can be compensated for

their claims is another question for DOES to determine."  Joint Status Report, ECF No. 8, dated

March 21, 2011, at ¶¶ 2, 3.  The Court granted the joint request to continue the stay, but noted

the failure of the plaintiffs to comply with the Court's March 15, 2012 Order and provide the

date of the plaintiffs' submission to DOES.  Specifically, the Court directed that the next status

report, due by May 4, 2012, "should include the date of filing of Plaintiffs' claims with DOES

with more precision than merely indicating that 'Plaintiffs are in the process of applying for

benefits from [DOES], but believe that this process will take some time.'"  Minute Order (Apr. 5,

2012).

The third status report, which was filed jointly, advised that the plaintiffs' counsel had

---

with the DOES."  Def.'s Status Report, ECF No. 12, dated June 14, 2012, at ¶ 2.

contacted DOES "regarding the claim submitted to it on behalf of Plaintiff by first class mail,"
but the report otherwise was silent regarding when the claim had been sent or whether or when
DOES had received the submission. Joint Status Report, ECF No. 9, dated May 4, 2012, at ¶ 1.
Plaintiffs' counsel further represented that he had "resubmitted those claim forms by courier, in
order to ensure that the claim is processed. Counsel for Plaintiff will submit the original or
supplemental filing to the Court to establish the date of filing upon return from the courier." *Id*.
The plaintiffs consented to an extension of the stay for an additional 60 days, but requested that
"this Court order further proceedings should the DOES not act on the original or supplemental
filing by that date." *Id*. at ¶ 2. The Court granted the joint request to continue the stay and
required the submission of another status report by June 6, 2012. *See* Minute Order (May 7,
2012).

The fourth status report, filed by the defendant alone,[7] stated that the defendant had still
"not received notice from DOES that there has been any filing nor has Defendant received
notification that Plaintiffs have filed the original or supplemental DOES filing with the Court, as
Plaintiffs informed the Court they would do in the May 4, 2012 Joint Status Report." Status
Report, ECF No. 10, dated June 6, 2012, at ¶ 1. In light of the plaintiffs' apparent failure to
submit the claims to DOES, contrary to the plaintiffs' counsel's prior representations, the
defendant requested that the stay be continued or "if Plaintiffs continue to fail to follow the
Court's Order or prosecute their case by filing their claims with DOES, Defendant believes that
dismissal of all claims with prejudice is the appropriate remedy." *Id*. at ¶ 4. The plaintiffs
remained silent and made no filing by the due date for the status report or in response to the

---

[7] Defense counsel indicates in the status report that plaintiffs' counsel had been "contacted . . . regarding preparing a
Joint Status Report as requested in the Court's Minute Order. However, Plaintiffs' counsel failed to provide
information regarding Plaintiffs' alleged filing of their claims to the D.C. Department of Employment Services
("DOES")." Status Report, ECF No. 10, dated June 6, 2012, at 1.

defendant's status report, which contained the clear warning that dismissal would be sought should the plaintiffs fail to provide proof of filing their claims with DOES. Upon consideration of the fourth status report, the Court issued an order noting the "troubling issue" raised in the defendant's submission that the plaintiffs had not submitted their claims to DOES "contrary to the Joint Status Report, filed on May 4, 2012, in which the plaintiff's counsel represented to the Court that 'Counsel for Plaintiff has resubmitted those claim forms by courier, in order to ensure that the claim is processed.'" Minute Order (June 8, 2012). The Court directed that plaintiffs (1) "submit to the Court, by June 12, 2012, documentation that establishes the date of filing of the plaintiff's claims with DOES;" and (2) "provide the Court an estimation of the duration of the DOES process from the date of filing of the DOES claims." *Id.*

The fifth and sixth status reports were filed by the parties separately. The fifth status report, filed by the plaintiffs, stated that counsel had "re-submitted a notice of injury" to DOES, without indicating the specific date when this submission had been made. According to plaintiffs' counsel, the courier service was requested to return a "stamped copy of the filing," and counsel promised to "supplement this Status Report with a copy of the filing later this week" since "[n]ot [sic] such return has been made as of the date of this filing." Plaintiff's [sic] Status Report, ECF No. 11, dated June 12, 2012, ¶¶ 1, 2, 5. Plaintiffs' counsel also indicated that in discussing the filing with DOES personnel, a DOES supervisor "expressed doubts as to the validity of the filing, given the old nature of the injury noticed therein." *Id.* at ¶ 3. In any event, plaintiffs argued, the claims subject to WPA "are a relatively small part of this suit – Counts I, III and IV as to Plaintiff Monique Lockhart only," and "[b]ecause of the relatively secondary nature of the Workers Compensation claims, Plaintiff questions the need to delay proceedings related to DOES at all." *Id.* at ¶¶ 6-7. Instead, the plaintiffs suggested that the defendant file dispositive

motions related to issues concerning "a failure of administrative exhaustion and or that the remedies are barred by statute." *Id*. at ¶ 7.

Shortly thereafter, in the sixth, and final, status report, filed by the defendant, defense counsel "confirmed that Defendant has *not* received notice of the claim from DOES or from its workers' compensation insurance carrier." Status Report, ECF No. 12, dated June 14, 2012, at ¶ 2. The defendant urged the Court to dismiss the case in its entirety for failure to prosecute and/or to follow the Court's Order if the plaintiffs could not prove their claim was submitted to DOES no later than May, 2012, or, if such proof was provided, that the stay "be continued pending the determination by DOES of the applicability of the WCA to Plaintiffs' claim." *Id*. at ¶ 6.

Contrary to the plaintiffs' promise, in their June 12, 2012 Status Report, to file a "stamped copy of the filing" made with DOES by the end of that week, plaintiffs have not submitted to the Court any copy, stamped or otherwise, of any submission to DOES. Pl.'s Status Report, ECF No. 11, dated June 12, 2012, at ¶ 2. As the defendant correctly observes, "despite repeated requests from the Court for documentation that establishes the date of filing of Plaintiff's claims with DOES and repeated statements from Plaintiffs' counsel that he was 'in the process of applying for benefits,' 'will submit the original or supplemental filing to the Court to establish the date of filing upon return from the courier,' and had 're-submitted a notice of injury . . . [and] will supplement [his] Status Report with a copy of the filing,' Plaintiffs' counsel has been unable to prove that a claim was submitted to the DOES." Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), ECF No. 14-1, at 3-4. Due to the persistent failure of the plaintiffs to file any documentation that any submission had been made to DOES seeking a determination regarding the applicability of the WCA to the plaintiffs' claims, on July 13, 2012, the Court lifted the stay, which had been in place for six months. *See* Minute Order (July 13, 2012).

Shortly thereafter, the defendant filed the pending motion to dismiss.

## II.     LEGAL STANDARD

Before outlining the legal standard of review that applies to the instant motion, the Court first clarifies the bases for the motion.  While the defendant has cited Federal Rule of Civil Procedure 41(b) for its motion to dismiss, based upon plaintiffs' counsel's failure to prosecute and/or comply with a court order, the motion is also predicated on the grounds that primary jurisdiction over the plaintiffs' claims rests with DOES, but without citation to any Federal Rule of Civil Procedure.  *See* Def.'s Mem. at 9 ("Plaintiffs' claims must now be dismissed because this Court lacks jurisdiction over the claims").  As noted, the defendant's Answer sets forth the affirmative defenses that the Complaint fails to state a claim for relief and that the claims are barred for failure to exhaust administrative remedies or to satisfy jurisdictional prerequisites. Yet, the defendant did not assert these defenses by motion prior to filing its Answer.  *See* FED. R. CIV. P. 12(b) (requiring that a motion "asserting any of these defenses must be made before pleading if a responsive pleading is allowed").

Nevertheless, when not raised in a motion prior to filing a pleading, the legal defenses of failure to establish subject matter jurisdiction or to state a claim upon which relief can be granted may be made "by a motion under Rule 12(c)."  FED. R. CIV. P. 12(h)(2)(B); *see also Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) ("Rule 12(b) was inapplicable: the defendants had already answered the complaint.  The motion therefore should have been for judgment on the pleadings under Rule 12(c)."); 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1361 (3d ed. 2012) (noting that "federal courts have allowed untimely motions if the defense has been previously included in the answer" and, "[m]oreover, under Rule 12(h) the defenses of lack of subject matter jurisdiction, Rule 12(b)(1)

[and] failure to state a claim upon which relief can be granted, Rule 12(b)(6),… are preserved from the waiver mechanism by the express terms of subdivision (h),…although technically they no longer are Rule 12(b) motions.").  Thus, although the defendant does not specify the procedural rule, the Court construes the alternative basis for the defendant's motion to be a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), which may be brought "[a]fter the pleadings are closed—but early enough not to delay trial."  FED. R. CIV. P. 12(c).

The legal standards under which the Court must assess both bases for the pending motion to dismiss, under Rules 41(b) and 12(c), are set forth below.

### A.    Dismissal For Failure To Prosecute Or Comply With Court Orders Under Rule 41(b)

Rule 41(b) provides that "a defendant may move to dismiss the action or any claim against it," when "the plaintiff fails to prosecute or to comply with these rules or a court order." FED. R. CIV. P. 41(b); *see also* LCvR 83.23 (authorizing Court to dismiss case for failure to prosecute "upon motion by an adverse party, or upon the Court's own motion," which dismissal is "without prejudice, unless the Court determines that the delay in prosecution of the claim has resulted in prejudice to an opposing party").  A dismissal on this basis "operates as an adjudication on the merits."  FED. R. CIV. P. 41(b).  Thus, involuntary dismissal under Rule 41(b) is "an extremely harsh sanction."  *Trakas v. Quality Brands, Inc*., 759 F.2d 185, 186 (D.C. Cir. 1985) (citing *Camps v. C & P Telephone Co.*, 692 F.2d 120, 123-24 (D.C. Cir. 1981).  Since disposition on the merits is favored, such dismissal may be considered as "a sanction of last resort to be applied only after less dire alternatives have been explored without success."  *Id*. at 187.  In *Bristol Petroleum Corp. v. Harris*, then-D.C. Circuit Judge Ruth Bader Ginsburg instructed that "[c]onsiderations relevant to ascertaining when dismissal, rather than a milder

disciplinary measure, is warranted include the effect of a plaintiff's dilatory or contumacious conduct on the court's docket, whether the plaintiff's behavior has prejudiced the defendant, and whether deterrence is necessary to protect the integrity of the judicial system."  901 F.2d 165, 167 (D.C. Cir. 1990) (citing *Shea v. Donohoe Construction Co., Inc.*, 795 F.2d 1071, 1074-79 (D.C. Cir. 1986); *see also B.R. v. District of Columbia*, 262 F.R.D. 11, 14-15 (D.D.C. 2009) (noting that the D.C. Circuit has approved "three justifications for dismissal with prejudice because of attorney misconduct: (1) severe prejudice to another party; (2) failure of alternative sanctions to mitigate the severe burden that the misconduct has already placed on the judicial system; and (3) the need to sanction conduct that demonstrates a blatant disregard for the court's orders in order to deter future misconduct") (citing *Gardner v. United States*, 211 F.3d 1305, 1309 (D.C. Cir. 2000) and *Shea*, 795 F.2d at 1074-79).

Exercise of the court's discretion to dismiss an action for failure to prosecute or comply with court orders is ordinarily limited to cases involving egregious conduct by plaintiffs, who are particularly dilatory, act in bad faith, or engage in deliberate misconduct, particularly when such conduct results in prejudice to the opposing party that is "so severe as to make it unfair to require the other party to proceed with the case."  *Peterson v. Archstone Cmtys. LLC*, 637 F.3d 416, 418 (D.C. Cir. 2011) (quoting *Gardner*, 211 F.3d at 1309) (internal quotation marks omitted); *Shea*, 795 F.2d at 1075.  Misconduct warranting dismissal can arise when a plaintiff repeatedly fails to heed or conspicuously disregards clear instructions to take certain steps, thereby frustrating the ability of the district court to discharge the responsibility of controlling its docket efficiently and to ensure compliance with judicial orders.  *See, e.g., Automated Datatron, Inc. v. Woodcock*, 659 F.2d 1168, 1170 (D.C. Cir. 1981) (dismissal of a count of a counterclaim upheld where the dismissal resulted from the litigant's "prolonged failure" over six month period to comply with

court's clear instruction to amend his pleadings, and plaintiff had advanced no excuse for "conspicuous disregard" of the court's directive); *Wooten v. Premier Yachts, Inc.*, No. 00-cv-7127, 2000 U.S. App. LEXIS 29204 (D.C. Cir. Oct. 18, 2000) (per curiam) (dismissal order upheld where plaintiff failed to appear at status conference, refused to participate in discovery, and filed baseless motions after warning by district court of the consequences); *Stella v. Mineta*, 231 F.R.D. 44, 49 (D.D.C. 2005) (dismissing action under Rule 41(b) to protect integrity of court where plaintiff failed to comply with six of the court's orders or rules, and plaintiff's failure to comply had prejudiced the defendants and unnecessarily consumed the court's time).  Where the record is unclear whether the client is aware of the attorney's misconduct in failing to comply with a court order, the D.C. Circuit has required the district court "to notify the client before dismissing a case pursuant to the deterrence rationale." *B.R.*, 262 F.R.D at 15 (citing *Shea*, 795 F.2d at 1077-78).

**B.      Motion for Judgment on the Pleadings Under Rule 12(c)**

A Rule 12(c) motion "shall be granted if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *N. Am. Catholic Educ. Programming Found. v. Womble, Carlyle, Sandridge & Rice, PLLC*, No. 09-cv-1167, 2012 U.S. Dist. LEXIS 119844 (D.D.C. Aug. 24, 2012) (quoting *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002) (internal quotation marks omitted).  In deciding a motion under Rule 12(c), "courts employ the same standard that governs a Rule 12(b)(6) motion to dismiss." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 265 (D.D.C. 2011); *see also Brooks v. Clinton*, 841 F. Supp. 2d 287, 297 (D.D.C. 2012).  "[T]he Court may not rely on facts outside the pleadings and must construe the complaint in the light most favorable to the non-moving party." *Id.* (citation omitted); s*ee also Moore v. United States*, Nos. 99-5197, 99-5198,

2000 U.S. App. LEXIS 12038 (D.C. Cir. 2000) (noting that "on Rule 12(c) motions we view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party") (citations and internal quotation marks omitted); *Schuchart v. La Taberna del Alabardero, Inc.*, 365 F.3d 33, 34 (D.C. Cir. 2004) (Under Rule 12(c), facts "must be read in the light most favorable to the non-moving parties, … granting them all reasonable inferences") (citing *Henthorn v. Dept. of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6).  Although detailed factual allegations are not required, the complaint must set forth "more than an unadorned, the defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and may not merely state "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555.  Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556-57).

If, on a motion under Rule 12(c), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009) (noting that "because Rule 12(d)'s conversion mechanism applies only to motions under Rule 12(b)(6) or 12(c), the impropriety of transforming Rule 12(b)(1) motions into summary-judgment motions is well-settled.") (internal citations and quotation marks omitted); *see also Vest v. Dep't of the*

*Air Force*, 793 F. Supp. 2d 103, 112 (D.D.C. 2011); *Dormu v. District of Columbia*, 795 F.

Supp. 2d 7, 17 n.4 (D.D.C. 2011); *Strong-Fischer v. Peters*, 554 F. Supp. 2d 19, 22 (D.D.C.

2008).

## III.   DISCUSSION

The defendant contends that the complaint must be dismissed because, first, DOES,

rather than this Court, has "primary jurisdiction" to determine whether the torts alleged in Counts

I (negligence), III (intentional infliction of emotional distress), IV (negligent infliction of

emotional distress), and V (negligent supervision) arose from a work-related incident in the

workplace and are covered by the WCA.[8]   As noted, the Court construes this claim as a motion

for a judgment on the pleadings under Rule 12(c) for failure to state a claim.[9]   Second, the

---

[8] In seeking a stay and referral of the claims to DOES, the defendant relied upon *Joyner v. Sibley Mem. Hosp.*, 826 A.2d 362, 374 (D.C. 2003), which instructs that where a "substantial question" exists as to whether the WCA applies, a stay is appropriate to give the plaintiff an opportunity to present the claims to DOES for a determination whether the claims are subject to or fall outside of the WCA's exclusivity provisions.  *See also Taylor v. D.C. Water & Sewer Auth.*, 957 A.2d 45, 53-54 (D.C. 2008) (finding that trial court erred by granting defendants' motion for summary judgment regarding plaintiff's battery and intentional infliction of emotional distress claims, rather than staying the proceeding to allow plaintiff to present the tort claims to DOES).  Mindful of this procedural mechanism preferred by the D.C. Court of Appeals to defer to DOES, the administrative agency having primary jurisdiction over compensability issues under the WCA, to determine whether the agency has jurisdiction over the tort claims at issue, this Court granted—and continued for six months—the joint request for a stay.  While the defendant apparently would be content to allow the stay to continue, *see* Def.'s Status Report, ECF No. 12, dated June 14, 2012 (stating "[d]ispositive motions are not the proper avenue to resolve the issues in front of the Court – staying the case pending a determination by [DOES] is the proper method"), this Court's docket will not be held hostage and a pending case stalled, when, as here, the plaintiffs evidently failed to pursue the opportunity provided by the Court to clarify that their claims fall outside the scope of WCA's exclusivity.  Instead, the Court will forge ahead to resolve the issue whether a "substantial question" exists regarding WCA coverage and, if so, evaluate the sufficiency of the plaintiffs' claims.

[9] The Court notes that under the "broad command of *Erie [R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)], . . . federal courts are to apply state substantive law and federal procedural law when sitting pursuant to their diversity jurisdiction." *Burke v. Air Serv. Int'l, Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)) (internal quotation marks omitted).  The WCA and the D.C. Court of Appeals' construction of this law are therefore binding on this Court.  *See Estate of McDaniels v. Liberty Mut. Group, Inc.*, No. 12-cv-202, 2012 U.S. Dist. LEXIS 124448, at *8-9 (D.D.C. Aug. 31, 2012) (noting the *Erie* doctrine and citing *Hall v. C & P Tel. Co.*, 793 F.2d 1354 (D.C. Cir. 1986), as requiring application of the D.C. Court of Appeals interpretation of the WCA to uphold the district court's dismissal for lack of subject matter jurisdiction).  While some Judges in this District have dismissed common law tort claims covered under the WCA for lack of subject matter jurisdiction under Rule 12(b)(1), *see, e.g., Estate of McDaniels*, 2012 U.S. Dist. LEXIS 124448, at *8; *Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F. Supp. 2d 59 (D.D.C. 2009), the more appropriate basis for dismissal appears to be for failure to state a claim under Rule 12(b)(6).  As Chief Judge Lamberth explained in an extensive discussion of the "proper procedural significance of jurisdictional state administrative exhaustion requirements in federal courts" in

defendant contends that the complaint should be dismissed, under Rule 41(b), due to the

plaintiffs' failure to prosecute and/or failure to follow the Court's order regarding filing a claim

with DOES.  The Court will address each of these arguments for dismissal below.

### A.    Plaintiffs' Work-Related Tort Claims Are Subject to the WCA.

The WCA, D.C. Code § 32-1503(a)(1), covers, in pertinent part, an injury to an employee

"that occurs in the District of Columbia if the employee performed work for the employer, at the

time of the injury."  The types of injuries covered by the WCA are broadly defined to encompass

"accidental injury or death arising out of and in the course of employment . . . and includes an

injury caused by the willful act of third persons directed against an employee because of his

employment."  D.C. CODE § 32-1501(12).  Thus, even intentional torts occurring at the

workplace and committed by other employees or third parties constitute injuries falling within

the scope of the WCA.  *See Clements v Ace Cash Express, Inc.*, No. 04-cv-02123, 2005 U.S.

Dist. LEXIS 12610, at *5-6 (D.D.C. June 23, 2005) (injuries sustained by employee when her

workplace was robbed "fall squarely within the provisions of the WCA because the robbery

occurred while Clements, in her capacity as manager, was opening Ace's store for business");

*Vanzant v. Wash. Metro. Area Transit Auth.*, 557 F. Supp. 2d 113, 118 (D.D.C. 2008) (plaintiff's

tort claims arising from supervisor's behavior, including intentionally striking plaintiff on the

head during a meeting, were subject to the WCA exclusively and therefore defendants' motion

for summary judgment granted "on the basis that the complaint fails to state a claim because the

WCA precludes suit").

---

*Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 34-37 (D.D.C. 2005), "a state administrative exhaustion
requirement, even if treated as jurisdictional by state courts, cannot be jurisdictional in federal courts." *Id.* at 36.
Instead, for Federal courts sitting in diversity jurisdiction, "the exhaustion requirement is prudential rather than
jurisdictional," and "the plaintiff has in fact 'failed to state a claim on which relief may be granted' with respect to
the unexhausted claim or claims by failing to demonstrate that a necessary precondition to judicial review of those
claims has been satisfied." *Id.*

For injuries subject to the WCA, the compensation provided under this law "shall constitute the employee's exclusive remedy against the employer . . . for any illness, injury . . . arising out of and in the course of his employment."  D.C. CODE § 32-1504(b).  The exclusivity of the WCA remedy for work-related injuries is further confirmed by the statutory provision that the employer's liability as "prescribed in § 32-1503 shall be exclusive and in place of all liability of such employer to the employee . . . , dependents, . . . and anyone otherwise entitled to recover damages from such employer at law on account of such injury . . . ."  *Id.* § 32-1504(a).  The exclusivity of remedy to employees is a fundamental part of the bargain reflected in workers' compensation laws, which necessarily entail a *quid pro quo* from both employers and employees. "[I]n return for the purchase of insurance against job-related injuries, the employer receives tort immunity; in return for giving up the right to sue the employer, the employee receives swift and sure benefits."  *USA Waste of Md., Inc. v. Love*, 954 A.2d 1027, 1032 (D.C. 2008) (quoting *Meiggs v. Associated Builders, Inc.*, 545 A.2d 631, 637 (D.C. 1988) (internal quotation marks omitted).  Thus, under the District of Columbia's WCA, employers are immune from tort actions by their employees for personal injuries arising out of and in the course of their employment, whether or not the employee exercises the right to obtain workers' compensation benefits.  *See Georgetown Univ. v. D.C. Dep't of Empl. Servs.*, 830 A.2d 865, 868, n.1 (D.C. 2003) (reversing DOES finding that employee's injury was not compensable under WCA where employer sought ruling that WCA applied in order to bar employee's pending civil tort claim, noting that "'[o]nce a workers' compensation act has become applicable either through compulsion or election, it affords the exclusive remedy for the injury by the employee or the employee's dependents against the employer and insurance carrier.  This is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for while the

employer assumes a new liability without fault, it is relieved of the prospect of large damage

verdicts.'") (quoting ARTHUR LARSON, *et al.*, LARSON'S WORKERS' COMPENSATION LAW §

100.01 (May 2000) (citations omitted)).

In the instant matter, the parties do not dispute that plaintiff Lockhart was an employee of

the defendant, that the allegedly injurious events of September 9, 2008 occurred while Lockhart

was at work, and that "all or a substantial part of the events, acts or omissions giving rise to

Plaintiffs' . . . claims . . . occurred in the District of Columbia."  Compl. ¶ 6.  As a consequence,

the defendant contends that the plaintiffs' tort-related claims for negligence (Count I), intentional

infliction of emotional distress (Count III), negligent infliction of emotional distress (Count IV)

and negligent supervision (Count V), are covered by the WCA and exclusively subject to

resolution by DOES.  *See* Def.'s Mot. to Dismiss at 2.

### 1.    Lockhart's Work-Related Tort Claims in Counts I, III, IV and V Will Be Dismissed As Conceded.

The plaintiffs do not dispute or even respond to the defendant's argument regarding the

exclusivity of the WCA remedies as to plaintiff Lockhart's injuries, as claimed in Counts I, III,

IV and V.  *See generally* Pls.' Opp'n to Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 17.  Indeed,

the law in this jurisdiction is clear that the WCA is the exclusive remedy for work-related

injuries, with the result that common law tort claims arising from such injuries, such as claims

for negligence, negligent or intentional infliction of emotional distress, and assault, are barred in

civil actions.  *See, e.g., Vanzant,* 557 F. Supp. 2d at 118 (granting summary judgment for

defendants with respect to plaintiff's tort claims for negligent and intentional infliction of

emotional distress, negligent hiring and supervision, and assault); *Doe v. United States,* 797 F.

Supp. 2d 78, 82-83 (D.D.C. 2011) (dismissing claims for, *inter alia*, negligence, negligent and

intentional infliction of emotional distress); *Bilal-Edwards v. United Planning Org.*, No. 11-cv-

2220, 2012 U.S. Dist. LEXIS 145619, at *15-18 (D.D.C. Oct. 10, 2012) (dismissing claims for negligence and intentional infliction of emotional distress).[10]

The law is also well-settled in this jurisdiction that "when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case." *Fox v. Document 5 Am. Airlines*, No. 02-cv-2069, 2003 U.S. Dist. LEXIS 13606, at *5 (D.D.C. Aug. 5, 2003) (citing *Sparrow v. United Air Lines, Inc.*, No. 98-cv-2194, 1999 U.S. Dist. LEXIS 22054, at *17 (D.D.C. July 23, 1999), *overruled on other grounds*, 216 F.3d 1111 (D.C. Cir. 2000)), *aff'd*, *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291 (D.C. Cir. 2004); *see also Toms v. Office of the Architect of the Capitol*, 650 F. Supp. 2d 11, 18-19 (D.D.C. 2009) (noting that "when the plaintiff is represented by counsel, [a court] may consider as conceded any arguments raised by a defendant's Rule 12(b)(6) motion that are not addressed in a plaintiff's opposition") (citing *Tnaib v. Document Tech., Inc.*, 450 F. Supp. 2d 87, 91 (D.D.C. 2006) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.") and *Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002) (dismissing as conceded certain counts, noting that "[t]he court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf in order to counter

---

[10] The D.C. Court of Appeals has indicated that "DOES does not have primary jurisdiction over emotional distress claims." *Joyner v. Sibley Mem. Hosp.*, 826 A.2d 362, 367 n.6 (D.C. 2003) (citing *Estate of Underwood v. National Credit Union Admin.*, 665 A.2d 621 (D.C. 1995)), but this holding has been limited to claims concerning the infliction of emotional distress arising from pervasive sexual harassment, which is not a "risk involved in or incidental to employment," *Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F. Supp. 2d 59, 64 n.3 (D.D.C. 2009) (internal quotation marks omitted). By contrast, where the alleged injuries are "directly traceable" to conditions of employment, they fall under the WCA, even if the plaintiff claims the conditions were imposed because of discriminatory animus. *Id.* (finding plaintiff's tort claim of false imprisonment subject to WCA when allegation that he was forced to stand for long period of time, despite his disability, "was a standard part of his employment"); *see also Vanzant*, 557 F. Supp. 2d at 117 ("WCA coverage also extends to claims for emotional distress or mental anguish where the underlying cause or tort is covered by the WCA."); *Doe*, 797 F. Supp. 2d at 83 (same). Here, the plaintiff Lockhart claims emotional distress from having been forced to perform her job, including staying awake while on duty and performing a patrol of the premises. *See* Compl. ¶¶ 19, 21. These claims relate specifically and directly to her employment conditions and are indisputably subject to the WCA.

those in the motion to dismiss")).  The Court, therefore, considers the defendant's motion to

dismiss these four counts as to Lockhart as conceded.[11]  *Accord* LCvR 7(b) (Court may treat

motion as conceded when defendant fails to file timely opposition memorandum); LCvR 7(h)(1)

(Court may treat as admitted any fact identified by moving party in its statement of material

facts, unless such fact is controverted in opposition to motion for summary judgment).

In their opposition, the plaintiffs argue against dismissal only of Count II, which alleges

wrongful discharge in violation of public policy on behalf of Lockhart, and "Counts I, III, IV,

and V as to Plaintiff [K.C.]."[12]  Pls.' Opp'n at ¶ 8.  According to the plaintiffs, the wrongful

termination claim in Count II falls "outside the scope of the [WCA], as it does not cover injuries

during employment . . . ."  *Id*. at ¶ 7.  Indeed, the defendant apparently does not seek dismissal of

Count II on grounds of the WCA's exclusivity, but pursuant to Rule 41(b), which will be

addressed below.

     2.     **Plaintiff K.C.'s Tort Claims in Counts I, III and V Will Be Dismissed As Subject to the WCA's Exclusivity.**

As noted above, the plaintiffs contest the defendant's motion to dismiss the counts

asserted on behalf of the plaintiff K.C.  The defendant argues that plaintiff K.C.'s claims "are

potentially subject to workers' compensation exclusivity and, therefore, this Court lacks primary

---

[11] The WCA requires that a claim for worker's compensation be filed "within 1 year after the injury . . . ."  D.C. CODE § 32-1514(a).  Plaintiffs have proffered no evidence that any claim has been filed with DOES and, in the fifth Status Report, allude to discussions with DOES personnel about the potential untimeliness of any such claim. Plaintiff's [sic] Status Report, ECF No. 11, dated June 12, 2012, ¶ 3.  The defendant argues that even if plaintiffs' workers' compensation claims are denied "due to the expiration of the limitations period," this would not preclude application of the WCA's exclusivity provision.  Def.'s Status Report, ECF No. 12, dated June 14, 2012, ¶ 3 (citing *Hicks v. Allegheny East Conference Ass'n of Seventh-Day Adventists, Inc.*, 712 A.2d 1021, 1022 (D.C. 1998) ("In short, workers' compensation is a substitute for any liability of the employer to an employee who otherwise would be entitled to recover damages from such employer at law on account of [an] injury or death suffered by the employee.") (emphasis omitted)).  The exclusivity of the WCA cannot be avoided simply by a tactical delay in filing a workers' compensation claim or allowing the statute of limitations to lapse.

[12] The plaintiffs are incorrect that Count IV (alleging negligent infliction of emotional distress) is asserted on behalf of plaintiff K.C.  The Complaint identifies only Lockhart as the plaintiff bringing Count IV.  Thus, this claim will be dismissed as conceded.

jurisdiction over these claims." Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply"), ECF

No. 20, at 4. The plaintiffs counter that the WCA "only covers injuries to employees," Pls.'

Opp'n at ¶ 5, and therefore that the claims of K.C. are not subject to dismissal, *see id*. at ¶ 6.

They further stress that K.C. "has suffered the most in this suit." *Id*. at ¶ 6.

 The question whether fetal injuries occurring at the mother's workplace are remedied

solely, if at all, through the workers' compensation system, has not been addressed in this

jurisdiction or by the D.C. Court of Appeals. Arguably, the plain terms of the WCA provide the

answer. The exclusivity provision in D.C. Code § 32-1504(a) expressly limits "all liability" of

an employer to the employee and to that employee's "*dependents*, next of kin, and *anyone*

*otherwise entitled to recover damages* from such employer at law on account of such injury. . . ."

(emphasis added). In short, this provision could be read to limit the employer's liability to the

third parties enumerated in the statute, including dependents, such as K.C., for damages arising

from a work-related injury to the employee.

 Other courts that have examined their local workers' compensation laws to address this

question have found, however, that "prenatal injuries, even when they occur simultaneously with

the mother's work-related injuries, are separate, rather than derivative, and that the exclusivity

provisions of workers' compensation acts do not bar such claims." *Meyer v. Burger King Corp*.,

2 P.3d 1015, 1019 (Wash. Ct. App. 2000) (collecting cases from Alabama, California, Colorado,

Indiana, Illinois, Louisiana); *cf. IBM v. Liberty Mut. Fire Ins. Co*., 303 F.3d 419, 427 (2d Cir.

2002) (workers' compensation insurance company had duty to defend employer on claims by

child that he suffered injury as a result of parents' workplace exposure to chemicals during

gestation since there was "reasonable possibility" that claim was within the coverage of the

insurance policy).

In sum, the claims presented by plaintiff K.C. present a "substantial question" as to whether this child's injuries are covered by the WCA and, if so, whether the WCA bars the plaintiff K.C.'s tort claims.  DOES has "'primary jurisdiction'" to determine whether the WCA applies exclusively "before the courts can exercise jurisdiction."  *Estate of Underwood v. Nat'l Credit Union Admin*., 665 A.2d 621, 631 (D.C. 1995) (quoting *Harrington v. Moss*, 407 A.2d 658, 661 (D.C. 1979)).  The plaintiffs bear the burden of proving that the WCA does not apply to preempt their tort claims and they have been provided ample opportunity, through a six-month stay of this action, to seek clarification from DOES to support their burden.  *See Carson v. Sim*, 778 F. Supp. 2d 85, 95-97 (D.D.C. 2011) (dismissing claim of intentional infliction of emotional distress because plaintiff failed to "meet[] his burden to show that the WCA does not preempt this claim"); *Ramey v. Potomac Elec. Power Co.*, 468 F. Supp. 2d 51, 55-56 (D.D.C. 2006) (dismissing claims of intentional and negligent infliction of emotional distress because plaintiff did not demonstrate that these claims fell outside of the WCA); *Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F. Supp. 2d 59, 63 (D.D.C. 2009) (noting that "because the WCA contains a number of presumptions that favor coverage, the employee bears the burden of proving that the WCA does not apply").  Failing to establish that the plaintiff K.C.'s injuries are not compensable under the WCA, when these same injuries are alleged to have occurred as a result of injuries sustained by his mother while at work, is fatal to the child's tort claims.  Accordingly, the tort claims of the plaintiff K.C. will be dismissed for failure to state a claim for which relief may be granted.

### B.   Plaintiffs' Failure to Prosecute and/or Comply with the Court's Order

In light of the dismissal of the plaintiffs' tort claims, the only claim remaining is Count II asserted on behalf of plaintiff Lockhart for wrongful discharge against public policy.  The only basis asserted by the defendant for dismissal of this Count is under Rule 41(b) because of the

plaintiffs' failure to prosecute and/or comply with the Court's order regarding submission of the tort claims to DOES.  The plaintiffs have consistently argued, however, that Count II should not be subject to the stay since it is not in the nature of a tort claim and is therefore not subject to the WCA.  *See* Pls' Opp'n at ¶ 7; *see also* Def.'s Mot. For Stay, ECF No. 4, at 2 (indicating plaintiffs' counsel did not consent to stay of Counts II and V).  Thus, any delay in consideration of Count II cannot be attributed to the plaintiffs, who wished to proceed on this count all along.  In any event, the defendant has not demonstrated, nor can demonstrate, any prejudice to it from the delay in consideration of Count II when it requested the stay of this claim over the plaintiffs' objection.

While the Court remains troubled by the plaintiffs' counsel's representations about submitting the tort claims to DOES but failing to follow-through with promised proof of those same submissions, failure by the plaintiffs to submit their tort claims to DOES during the stay has no bearing on the viability of Count II.  Thus, penalizing plaintiff Lockhart by dismissal of Count II, which is separate from her tort claims, would be overly harsh.  Accordingly, the defendant's motion to dismiss Count II is denied.

## IV.   CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is granted in part and denied in part.  Specifically, the plaintiffs' common law tort claims in Counts I, III, IV and V of the Complaint are dismissed, but plaintiff Lockhart's claim in Count II that she was discharged in violation of public policy remains.

The parties are directed to submit by December 5, 2012 a proposed scheduling order with any proposed modifications to the proposal previously provided in the parties' Joint Meet and Confer Report, ECF No. 15, at 3.

A separate order consistent with this Memorandum Opinion is contemporaneously filed.

**DATED: November 21, 2012**

_____
BERYL A. HOWELL
United States District Judge